UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

National Football League Players Association,
on its own behalf and on behalf of Tom Brady,

        Petitioner,         Civ. No. 15-3168 (RHK/HB)
                                              **ORDER**

v.

National Football League and
National Football League Management
Council,

        Respondents.

---

        This matter is before the Court *sua sponte*.

        This action arises out of a July 28, 2015 arbitration award (the "Award") issued by Roger Goodell, Commissioner of Respondent National Football League (the "NFL"). The Award sustained a four-game suspension imposed on New England Patriots quarterback Tom Brady as a result of his purported involvement in what has become known colloquially as "deflate-gate."[1] Brady's union, Petitioner National Football League Players Association (the "Union"), commenced this action on July 29, 2015, seeking vacatur of the Award on a host of grounds, primarily that it fails to draw its essence from the parties' collective-bargaining agreement (CBA).

        This Court, however, perceives no reason for this action to proceed in Minnesota. On the same day the Award was issued, Respondent National Football League

---

[1] See, e.g., Erin McClam, Deflate-Gate: Patriots Owner Rips NFL for Persecuting Tom Brady, located at http://www.nbcnews.com/news/sports/tom-brady-deflate-gate-patriots-owner-rips-nfl-persecuting-quarterback-n400376 (last visited July 29, 2015).

Management Council (the "Council"), the exclusive bargaining representative of the NFL, commenced an action against the Union in the United States District Court for the Southern District of New York seeking to confirm the Award. See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Assoc., No. 15 Civ. 5916 (filed July 28, 2015) (the "New York Action"). The New York Action alleges the converse of the claims here: the Award was "in full accord with the parties' CBA and draws its essence from the parties' agreement" and, hence, is binding on Brady and the Union. (New York Action Compl., Count 1 ¶ 2.) In this Court's view, therefore, the New York Action triggers application of the first-filed rule.

Under that rule, the court "initially seized of a controversy" generally "should be the one to decide the case." Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985) (citation omitted). The rule recognizes the comity between coequal federal courts and promotes the efficient use of judicial resources by authorizing a later-filed, substantially similar action's transfer, stay or dismissal in deference to an earlier case. Orthmann, 765 F.2d at 121; Johnson Bros. Liquor Co. v. Bacardi U.S.A., Inc., 830 F. Supp. 2d 697, 711 (D. Minn. 2011) (Montgomery, J.). The Court enjoys ample discretion in determining whether to apply the rule; it "is not intended to be rigid, mechanical, or inflexible, but [rather is] to be applied in a manner best serving the interests of justice." Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1005 (8th Cir. 1993). Nevertheless, "[t]he prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply." Id.; accord, e.g., S. Mills, Inc. v. Nunes, 586 F. App'x 702, 705 (11th Cir. 2014) (*per curiam*) ("[W]here two actions involving

overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.") (citation omitted).

The Court appreciates no "compelling circumstances" undermining application of the first-filed rule to transfer this action from Minnesota to New York, where the first action was filed. Indeed, the Court sees little reason for this action to have been commenced in Minnesota *at all*. Brady plays for a team in Massachusetts; the Union is headquartered in Washington, D.C.; the NFL is headquartered in New York; the arbitration proceedings took place in New York; and the award was issued in New York. In the undersigned's view, therefore, it makes eminent sense the NFL would have commenced its action seeking confirmation of the award in the Southern District of New York. Why the instant action was filed here, however, is far less clear.[2]

Moreover, this case and the New York Action are "substantially duplicative." Ritchie Capital Mgmt., L.L.C. v. Jeffries, 653 F.3d 755, 763 n.3 (8th Cir. 2011). The

---

[2] The Court strongly suspects the Union filed in Minnesota because it has obtained favorable rulings from this Court in the past on behalf of its members. See, e.g., Nat'l Football League Players Assoc. v. Nat'l Football League, Civ. No. 14-4990 (D. Minn. Feb. 26, 2015) (Doty, J.), appeal docketed, No. 15-1438 (8th Cir. Feb. 27, 2015); Brady v. Nat'l Football League, 779 F. Supp. 2d 992 (D. Minn. 2011) (Nelson, J.), rev'd, 644 F.3d 661 (8th Cir. 2011). Indeed, the Union makes only a fleeting attempt to justify venuing this action in Minnesota, noting in two sentences of its 160-paragraph Petition that legal issues raised in the underlying arbitration "were directly related to" legal issues addressed in the action disposed of by Judge Doty in February (concerning Minnesota Vikings running back Adrian Peterson). (Pet. ¶ 96.) However, the Court fails to appreciate how legal issues resolved in Peterson justify bringing this action here when it enjoys no other connection to Minnesota. Indeed, carried to its logical conclusion, accepting the Union's premise would mean that a court that had decided, for example, a large corporation had engaged in racial discrimination would be the appropriate venue for every future racial-discrimination case against that corporation, no matter where the employee was located or where the alleged discrimination had occurred. Venue simply cannot be predicated on such a thin reed. See also 28 U.S.C. § 1391.

parties overlap in the two cases and the issues are mere flip-sides of the same coin: the Union argues here that the Award should be vacated for failing to draw its essence from the parties' CBA, while the New York Action alleges the precise opposite and asserts the Award draws its essence from the CBA and should be confirmed. Moreover, any claim that the Award cannot stand may be raised by the Union in the New York Action. Simply put, the cases are part and parcel of the same whole and should be heard together in the most appropriate forum: the Southern District of New York, where the arbitration occurred, the Award issued, and the first action concerning the Award was commenced. See, e.g., S. Mills, 586 F. App'x at 706 (court should not "fragment a case about a single arbitration award into two suits" by permitting simultaneous actions to confirm and vacate arbitration award); see also 9 U.S.C. §§ 9, 10 (petitions to confirm or vacate arbitration awards generally should be brought "in and for the district where[] the award was made").

Based on the foregoing, and all the files, records, and proceedings herein, the Court concludes the first-filed rule militates in favor of transferring this action to the Southern District of New York. Accordingly, **IT IS ORDERED** that this action (and its companion miscellaneous case, No. 15-mc-59, in which the Union's papers were initially filed under seal) is **TRANSFERRED** to the United States District Court for the Southern District of New York. The Clerk of the Court is directed to take all steps necessary to effectuate this transfer in an expeditious fashion.

Date: July 30, 2015                                s/ Richard H. Kyle
                                                   RICHARD H. KYLE
                                                   United States District Judge